## Environmental Health and Safety Compliance Plan
## Attachment A

1. The United States and U.S. Minerals, Inc. (USM), agree that, as a condition of USM's misdemeanor sentence, USM will develop and implement a comprehensive compliance program, hereinafter referred to as an "Environmental, Health and Safety Compliance Plan" (EHS PLAN), subject to review and approval by the U.S. Attorney's Office in consultation with the Environmental Protection Agency (EPA) and the Occupational Safety and Health Administration (OSHA). The EHS PLAN will focus on minimizing employee exposures to environmental, safety, and health hazards at its six manufacturing facilities located throughout the United States, listed in Appendix A to this agreement and covered under the EHS Plan. If during the term of the EHS PLAN USM opens a new facility it shall, no later than ninety (90) days prior to beginning operations at the facility, provide to the U.S. Attorney's Office in writing: 1) the location of the new facility; 2) a complete description of the activities and processes that will occur at the new facility; and, 3) the date when activities at the new facility will commence. Any new facilities opened by USM during the term of the EHS PLAN are also included under the EHS PLAN.

2. The EHS PLAN is not intended to replace the regulations promulgated pursuant to the Occupational Safety and Health Act of 1970, 29 U.S.C. 15 § 621 *et seq.* (OSH Act), any OSHA guidance, federal environmental statutes or regulations, or any other United States or state statute, or regulation that may otherwise apply to USM operations. The purpose of the EHS PLAN is to augment the requirements of existing law by increasing and improving training, inspections, reviews, and audits of USM facilities, and require periodic reports to the United States Probation Office for the District of Montana, the United States Attorney's Office for the District of Montana, EPA, OSHA, and to ensure that USM is following the requirements of the EHS PLAN and all applicable federal environmental and OSH Act regulations and requirements.

3. USM will submit an outline and schedule of its plan to develop and implement the EHS PLAN, including timelines and milestones with applicable dates, to the United States Attorney's Office within sixty (60) days of USM's change of plea for review and approval. Once approved, the parties will share the EHS PLAN with the Court for its review and approval. The U.S. Probation Office, in consultation with the EPA, OSHA, and the U.S. Attorney's Office, will have the right to periodically monitor the approved EHS PLAN during the five-year probationary period, bring any violations to the attention of USM for corrective action, and to the Court if timely corrective action is not taken.

4. The operation/costs of the EHS PLAN will be borne entirely by USM.

5. To achieve the goals set forth in the United States Sentencing Guidelines, § 8B2.1, the EHS PLAN will consist of the following terms and applies at all of USM's facilities:

a. Environmental Health and Safety Program Structure

   *i. Environmental, Health and Safety Manager.* USM agrees to employ a full-time environmental, health and safety manager (EHS Manager) for its facilities. If USM does not currently employ an EHS Manager, within thirty (30) days of sentencing USM shall furnish to the U.S. Attorney's Office the name(s) and curriculum vitae(s) of the person or persons USM proposes to retain as a qualified individual to serve as full-time EHS Manager for USM's facilities. The EHS Manager position will be filled by an individual with a significant environmental, safety, and health compliance background who is thoroughly familiar with the requirements of the EHS PLAN and is knowledgeable about all applicable environmental OSH Act regulations and requirements.

   *ii.* The U.S. Attorney's Office, in consultation with the EPA and OSHA, has fifteen (15) days to object to the selection of USM's EHS Manager. The objection shall identify the specific aspects of the candidate's experience and training deemed to be inadequate. If the U.S. Attorney's Office objects, USM shall continue the search until it locates a person to whom the U.S. Attorney's Office does not object. That person shall be retained by USM promptly following expiration of the fifteen (15) day period without objection. Should USM's EHS Manager's employment cease during the EHS PLAN, the selection of the new safety and health manager shall follow the process described above and shall commence within fifteen (15) days of the date on which the position becomes vacant. This process will not extend the abatement, certification, and document submission dates set forth in this Agreement. The EHS Manager shall be supervised and report to the most senior level manager as follows: Vice President of Operations at USM's corporate headquarters. The EHS Manager shall have authority to suspend work until any environmental, health, and safety issue has been abated, without first referring the matter to any other person in the USM's hierarchy.

   *iii. Right to judicial review of USAO objections.* USM shall have the right to petition to the Court, and for the Court to decide, in the event USM believes the U.S. Attorney's Office is unreasonably objecting to the proposed EHS Manager.

   *iv. Internal safety inspections.* USM agrees that the EHS Manager-- or another qualified member of USM management with safety and health education, experience, and credentials comparable to that of the EHS Manager --will conduct a random, unannounced safety audit each quarter at each covered facility and complete a report of the findings. A system will be established to track the findings until hazards are addressed or eliminated. Facility management is required to implement any recommendations within thirty (30) days. If a

corrective measure cannot be implemented within thirty (30) days, the reason, and the interim measures taken and their date of implementation shall be documented.

v. *Internal complaints and suggestions.* USM agrees to establish a system for employees to notify USM's management, including the EHS Manager, of any health or safety concerns, anonymously and without fear of reprisal. The system shall include procedures to advise the employee, if known, of the status of implemented and proposed actions to address the complaint within thirty (30) days, and shall track the complaints, management's responses, and the actions taken to resolve the issue.

b. Training

i. *Consultant training program.* USM agrees to engage a third party consultant, who is qualified by education and training to develop an environmental, safety, and health training program specifically addressing the following: airborne dust hazards; proper use of personal protective equipment, including respirators and hearing protection; fall hazards; the control of hazardous energy (lockout/tagout requirements ("LOTO"); hazards attendant on entry into permit-required confined spaces; and, safe powered industrial truck operation. USM shall use this program to train employees, and agrees to train all employees at its six manufacturing facilities within six (6) months of the Court's review and approval of the EHS PLAN. USM also agrees to provide this training to new employees before placing the new employee in his or her position. The training program shall also include refresher training provided by the safety manager on at least an annual basis.

ii. *Training augments the Occupational Safety and Health Act's requirements.* None of the abatement measures described in this Agreement are intended to change USM's obligation to comply with applicable federal environmental or OSH Act statutory or regulatory standards. The training which USM has agreed to undertake as part of this Agreement and as described herein is not intended to replace any training requirements of the OSH Act, but rather is intended to supplement and augment the training requirements of the OSH Act.

c. Third-Party Audits

i. *Third-party auditor qualifications and responsibilities.* USM will retain an expert or experts qualified by education, training, and experience to consult in developing and revising USM's EHS programs to reduce the risk of environmental exposures, occupational injuries, illnesses, and fatalities and to assist USM to comply with the terms of the EHS PLAN at USM's covered facilities. Hereinafter, the expert will be referred to as the Third-Party Auditor (TPA). This assistance shall include audits of the covered facilities to determine compliance and shall include observation

of equipment and processes, employee interviews, air sampling, noise sampling, and any other sampling or testing which, in the independent judgment of the TPA, are necessary to determine whether and the extent to which employees may be exposed to health and safety hazards at the covered facilities.

ii. *Selection procedure.* Within sixty (60) days of sentencing, USM shall furnish to the U.S. Attorney's office a list of three qualified candidates for the TPA position along with its recommendation for approval of one of the candidates from which the U.S. Attorney's office, in consultation with the EPA and OSHA, will select one of the candidates to serve as the TPA. To the extent practicable, USM shall endeavor to submit candidates that have not provided auditing or consulting services to USM within the last calendar year. The U.S. Attorney's Office has the right to reject any proposed TPA. All work performed by the TPA and its auditors must be certified as accurate and truthful. The certification shall be made with the understanding that any false information knowingly submitted is subject to prosecution under 18 U.S.C. § 1001.

> iii. *Right to judicial review of USAO rejection to TPA.* USM shall have the right to petition to the Court, and for the Court to decide, in the event USM believes the U.S. Attorney's Office's is unreasonably rejecting USM's suggested TPA.

iv. *Audits.* The TPA shall conduct an audit at each covered facility at least once each year during the term of the EHS PLAN to determine whether the covered facilities are complying with any applicable federal environmental requirements, the OSH Act, and the terms of the EHS PLAN. The TPA shall be accompanied by USM's EHS manager or another qualified member of USM management with safety and health education, experience, and credentials comparable to that of the EHS manager during each site visit and audit.

v. *Report of findings and recommendations.* For each audit, the TPA will prepare a report of the findings and recommendations.

vi. *Date response due.* USM shall review and evaluate each finding within thirty (30) days and implement feasible recommendations as soon as practical but not later than forty-five (45) days after the receipt of the report.

vii. *Copies of Reports.* Copies of the reports prepared by the TPA shall be provided to the U.S. Attorney's Office and the United States Probation Office at the same time the report is provided to USM.

viii. *Statement of action.* Within forty-five (45) days after receipt of a report from the TPA, USM will prepare a statement of the action ("Statement of Action") that it intends to take on each recommendation. If USM determines not to implement a recommendation, it shall state the reason and describe the actions it is taking or proposes to take to address the matter. Copies of the Statement of Action shall be provided to the U.S. Attorney's Office pursuant to the notice provisions herein.

ix. *Contractual independence.* During the term of the EHS PLAN, the TPA shall not have any ownership interest or stock ownership in USM; must have no ongoing contractual or business relationship, other than that of the TPA, with USM; and may not seek or serve in other capacities with USM, unless first disclosed to the U.S. Attorney's Office. The TPA must exercise independent judgment and ensure that the objectives set forth in the EHS PLAN are met. USM and the TPA shall notify the U.S. Attorney's Office if any contractual relationships or proposed contractual relationships between USM and the TPA arise during the term of the EHS PLAN.

x. *Functional independence.* The TPA shall function independently of USM, but may communicate with USM about the substance of its work. The TPA may consult with, but shall not receive or request approval in any form from any employee of USM regarding the development, clearance, or evaluation of any document, report, or communication of any kind, whether draft or final, required by the EHS PLAN.

d. Enhanced EPA and OSHA Oversight

  i. If, based on any information provided to OSHA in audit reports or in documents requested by EPA or OSHA pursuant to the EHS PLAN, EPA or OSHA determines there are grounds to believe that a violation of an environmental, safety, or health standard may exist that threatens physical harm, or that an imminent danger exists at a USM facility:

    1. USM shall allow EPA and OSHA personnel to inspect the USM facility without a warrant and EPA and OSHA may issue citations or take other lawful enforcement actions during such inspections. OSHA and/or EPA shall provide the USM EHS Manager 24 hours notice of a proposed inspection to allow the EHS Manager to participate in the inspection. Notice is not required for any inspection initiated for a reason other than those listed in 5(d)(i) above.

    2. EPA and OSHA inspectors will provide the opportunity for USM's EHS Manager or another qualified member of USM Management to attend the closing conference for every inspection.

    3. EPA and OSHA will have access to and the right to require production of documents in the possession or control of USM, subject to the limitations of privilege, which EPA and OSHA reasonably believes will assist in determining USM's compliance with the OSH Act or the standards promulgated thereunder; and,

    EPA and OSHA will have authority to interview any agent or employee of USM concerning any matter related to compliance with applicable federal environmental requirements or the OSHA Act or the standards promulgated thereunder, subject to limitations of privilege.

6. USM agrees to comply with the terms and provisions in the Settlement Agreement executed with the U.S. Department of Labor's Office of the Solicitor in the related civil matter, *Secretary of Labor v. U.S. Minerals Inc.*, OSHRC Docket No. 16-0723 (OSHA Inspection #1099265), incorporated herein by reference.

7. The EHS PLAN shall be effective upon approval by the Court and its term shall be for five (5) years.

APPENDIX A

United States Minerals, Inc. – Manufacturing Locations

**Coffeen Plant**
796 CIPS Trails
Coffeen, IL 62017
(217) 534-2370

**Galveston Plant**
5712 Harbor Side Drive
Galveston, TX 77554
(409) 740-3355

**Harvey Plant**
3860 Peters Road
Harvey, LA 70058
(504) 263-8525

**La Cygne Plant**
911 Linnco Drive
La Cygne, KS 66040
(913) 757-2755

**Roberts Plant**
1254 70th Avenue
Roberts, WI 540023
(800) 343-0117

**Anaconda Plant**
800 Main Street
Anaconda, MT 59711

## Medical Monitoring Program
## Attachment B

1. The United States and U.S. Minerals, Inc. (USM), agree that as a condition of its misdemeanor sentence, USM will develop and implement an employee medical monitoring program, hereinafter referred to as the "Medical Monitoring Program" (MMP), subject to review and approval by the U.S. Attorney's Office in consultation with the Environmental Protection Agency (EPA) and the Occupational Safety and Health Administration (OSHA). The MMP is specific to employees currently working, or that formerly worked at USM's facility at 800 Main Street, Anaconda, MT 59711 (the "Facility"). The MMP is designed to accomplish the following: 1) identify and educate current and former employees that worked at the Facility on the potential risks associated with exposure to metal and heavy metal contaminants present at the Facility, including, but not limited to, inorganic arsenic, lead, and cadmium; 2) provide medical monitoring for adverse short- and long-term health outcomes associated with employee exposures to metal and heavy metal contaminants present at the Facility; and, 3) allow for long-term tracking and monitoring of current and former USM employees that worked at the Facility.

2. The MMP is not intended to replace the regulations promulgated pursuant to the Occupational Safety and Health Act of 1970, 29 U.S.C. 15 § 621 *et seq.* (OSH Act), any OSHA guidance, federal environmental statute or regulations, or any other United States or state statute, or regulation that may otherwise apply to USM operations. The function of the MMP is to augment the requirements of existing law by ensuring medical monitoring and requiring periodic reports to the United States Probation Office for the District of Montana, the United States Attorney's Office for the District of Montana, EPA, and OSHA.

3. The MMP shall consist of the following elements:

    a. *Identification of MMP Participants.* Within sixty (60) days of the misdemeanor sentence, USM will compile and provide to the U.S. Probation Office and the U.S. Attorney's Office a list that includes: 1) current employees who are primarily assigned to the Facility; and 2) former employees who were primarily assigned to the Facility since its inception in 2013. This list shall include, to the extent available, the employees' full legal names, last known mailing addresses, telephone numbers, and email addresses. Current and former employees included in this group shall be known hereafter as "Participants."

    b. *Participant Notification.* Within ninety (90) days of the misdemeanor sentence, USM shall, in writing and by certified mail, notify Participants of the purpose of the MMP, the procedures to follow to participate in the MMP, the health hazards associated with arsenic and other heavy metals, Participants' rights, and USM's obligations under the

MMP. Included with the notification shall be a form for each Participant to complete and return indicating their decision as to whether they wish to participate in the MMP. This will include a limited medical release for the Participant to complete giving USM permission to provide all medical information and occupational exposure data it may possess to a physician performing MMP medical evaluations, and for the MMP physician to provide to the Participant's primary care physician the results of the evaluations generated under the MMP, including, but not limited to, medical opinions, X-rays, CT scans, lab results, and spirometry results. USM shall provide each Participant a self-addressed, stamped envelope in which to return the election form and medical release. USM will notify Participants that participation in the MMP does not constitute a waiver of their privacy rights, HIPPAA rights, or any other legal rights, including the right to pursue civil litigation against USM, and that USM will not have access to the evaluations, test results, or any other Participant medical records. USM shall provide to the U.S. Probation Office and the U.S. Attorney's Office, for each Participant, a statement indicating that the Participant either received the notification or that the notification was undeliverable. If USM becomes aware that any Participant does not receive notification through mail, USM agrees to use best efforts to provide the notification to Participants through other means, including telephonically and via electronic mail. USM will document its efforts to reach Participants not reached through the initial mailing. After the initial notification and election, USM shall send annual reminders to Participants encouraging them to schedule their annual follow up examinations. After 2 years of documented, unsuccessful attempts to contact Participants, USM will not be required to continue contacting or reporting the status of those Participants who could not be contacted or did not respond.

Prior to notifying Participants, USM will provide to the U.S. Probation Office and the U.S. Attorney's Office, for their review and approval, the materials USM proposes to send to Participants.

c. *MMP Testing Locations.* USM will arrange directly with a licensed physician with expertise in occupational medicine[1] in the Butte, Montana, area to provide the medical review, history, examinations, and laboratory testing required under the MMP. If a Participant lives outside of the Butte, Montana, area, or, if there is no licensed physician with expertise in occupational medicine available in the Butte area, USM will choose a similarly qualified physician convenient to where the Participant lives. No Participant should be required to travel more than 100 miles from their

---

[1] Resources to find licensed occupational medicine providers include the American College of Occupational and Environmental Medicine at www.acoem.org/Find-a-Provider (last visited Feb. 17, 2021), and the Association of Occupational and Environmental Clinics at www.aoec.org/directory.htm (last visited Feb. 17, 2021).

residence unless no such qualified physician exists, in which case the closest qualified physician should be chosen.

d. USM will provide to the occupational physician, pursuant to a completed limited medical release as noted in paragraph 9.b, *supra*, all medical and occupational exposure records for employees to be monitored, and such compensation as is appropriate for adequate review of these materials. The occupational physician may, based upon review of these records, expand upon the minimum medical monitoring elements recommended below.

e. *MMP Examinations.* An initial and annual medical examination under the MMP shall be performed by a licensed physician and shall be followed by at least annual examinations thereafter. The examinations shall include at a minimum the following:

> i. At the initial evaluation and annually thereafter, a thorough medical history, including a smoking history, with particular attention to the ears, nose, oral cavity and throat, dentition, respiratory, hematologic, renal, urinary, cardiovascular, and neurological (including hearing) systems;
> ii. At the initial evaluation and annually thereafter, a thorough occupational and environmental history, with particular attention to occupational and avocational exposure to dermal or airborne metal, mineral, or other dust exposure;
> iii. At the initial evaluation and annually thereafter, a thorough physical examination with all vital signs, and particular attention to the above systems, including a thorough nasal, skin (including nails), pulmonary, superficial lymph node, and neurological examination;
> iv. At the initial evaluation and annually thereafter, laboratory studies including:
>> 1. Complete blood count, including differential, red cell indices, and platelet count;
>> 2. Comprehensive metabolic panel; and,
>> 3. Urine studies, including routine urinalysis, creatinine-corrected inorganic arsenic, and creatinine-corrected cadmium.
> v. At the initial evaluation and annually thereafter, spirometry studies (when pandemic conditions permit);
> vi. At the initial evaluation, the test battery shall include a blood lead level (BLL) for workers who worked for USM at the Facility from April through June 2021. Blood cadmium levels and urine beta-2-microglobulin levels shall also be performed for USM employees who were working at the Facility or

       proximal to the time of plant closure. If the BLL, blood or urine cadmium or beta-2 microglobulin levels are above reference ranges, the physician shall refer to the appropriate OSHA medical surveillance guidelines for further management;

  vii. At the initial evaluation, a 14" x 17" standard film or digital posterior-anterior and lateral chest X-ray, and imaging follow-up and pulmonology referral as needed;

  viii. At the initial evaluation, a low-dose chest CT scan, and imaging follow-up and pulmonology referral as needed;

  ix. Smoking cessation information should be offered, if indicated, at each encounter, as smoking tends to be additive, if not synergistic, with other carcinogens implicated at USM;

  x. Any other examination or laboratory test that the examining physician deems necessary by sound medical practice, particularly when initial or annual evaluation shows abnormalities that may be consistent with the health effects of chronic arsenic toxicity, or exposure to the other heavy metals, noted in paragraphs 5 through 7, *supra*; and,

  xi. Each Participant shall be entitled to an initial evaluation and four (4) annual follow up visits, for a total of a five-year monitoring period. At the completion of the initial evaluation and at the completion of each annual evaluation, the occupational medicine physician will provide to the Participant and the Participant's primary care physician, a full report of findings and recommendations for continued follow up on all out-of-range findings, and particularly regarding long-latency diseases, such as cancer.

f. *Participant Responsibilities under the MMP.* Participants will provide to the occupational medicine physician or testing provider any requested personal or work history that the provider believes is relevant to the examination(s). Participants must keep USM informed of their current mailing address, telephone number, and email address. If a Participant moves or changes telephone numbers, the Participant must provide USM the new information within thirty (30) days of the change. Notice of any change of address or telephone number shall be sent to:

United States Minerals, Inc.
18635 West Creek Drive
Tinley Park, IL 60477
Telephone: (219) 864-0909
Toll Free: (800) 803-2803

    g. *Reporting.* Annually USM shall provide to the U.S. Probation Office and the U.S. Attorney's Office a report reflecting: 1) the names, addresses, and telephone numbers of Participants that obtained medical examinations under the MMP during the prior year; and, 2) a list of Participants eligible to receive medical examinations under the MMP but who did not, along with an explanation why each Participant did not receive his or her annual medical evaluation under the MMP.

4. To the extent that a Participant is a current employee at the Facility and is participating in any medical monitoring programs required by OSHA's expanded health standards, including, but not limited to, 29 C.F.R. §§ 1910.1018, 1025, and 1027, the testing and examinations required under those surveillance programs need not be duplicated under the MMP. Once a Participant no longer works at the Facility, the examination, testing, and recordkeeping requirements of this MMP fully apply.

5. All costs of the MMP will be borne by USM, including, but not limited to, medical examinations, laboratory testing and reports, X-rays, record maintenance, and any referrals, deemed necessary in the reasoned medical opinion of the examining physician, related to Participants' exposures at the Facility and the health outcomes that may result from those exposures.

6. The MMP will continue for five (5) years after USM's sentencing.