**RYAN G. WELDON**
**Assistant U.S. Attorney**
**ERIC E. NELSON**
**Special Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 8329**
**Missoula, MT 59807**
**105 E. Pine, 2nd Floor**
**Missoula, MT 59802**
**Phone: (406) 542-8851**
**FAX: (406) 542-1476**
**E-mail: Ryan.Weldon@usdoj.gov**
**Nelson.Eric@epa.gov**

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BUTTE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**U.S. MINERALS, INC.,**<br><br>**Defendant.** | **CR 21-25-BU-DLC**<br><br>**SENTENCING MEMORANDUM** |

## INTRODUCTION

Every Montanan deserves to earn a living and to be safe while doing so. No corporate objective, executive salary, or shareholder profit can impact that right.

The United States charged U.S. Minerals because it repeatedly exposed its employees to arsenic levels beyond acceptable limits while processing slag in Anaconda, Montana. The State of Montana even shut U.S. Minerals down, but when allowed to reopen, U.S. Minerals continued to expose its workers to unacceptable amounts of arsenic.

Exposures to arsenic can be devastating, causing decreased lung function, chronic obstructive pulmonary disease, bronchitis, and lung disease. Arsenic exposure also leads to skin diseases, such as arsenical keratinosis, darkened patches of skin, wart formation, skin lesions, and increased risk of skin cancer. This may also cause cardiovascular issues, as well as decreased sensation and numbness, and lung, liver, kidney, bladder, and other cancers.

As a result of this case, U.S. Minerals pleaded guilty to committing the crime of a Clean Air Act Violation—Negligent Endangerment, in violation of 42 U.S.C. § 7413(c)(4). PSR ¶¶ 1-10. At sentencing, the United States will recommend the following:

///

///

- Five years of probation.

- A criminal fine totaling $393,200. PSR ¶ 125. This fine amount considered the additional penalties imposed against U.S. Minerals in civil proceedings in the amount of $106,800. PSR ¶ 125. U.S. Minerals, therefore, paid $500,000 in total. PSR ¶ 125.

- The probationary conditions that U.S. Minerals must comply with the Environmental Health and Compliance Plan (Attachment A) and the Medial Monitoring Plan (Attachment B).

## ARGUMENT

**Sentencing Analysis:**

Section 3553(a) of Title 18 of the United States Code contains prefatory language —"The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Those purposes include the need for the sentence to:

- reflect the seriousness of the offense;
- promote respect for the law;
- provide just punishment for the offense;
- afford adequate deterrence to criminal conduct;
- protect the public from further crimes of the defendant; and,
- provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In addition, subsection (1) of § 3553(a) requires the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant; subsection (3) requires the Court to consider the kinds of sentences available; subsections (4), (5), and (6) require the Court to consider the sentencing guidelines and policy statements, and to avoid unwarranted sentencing disparity; and subsection (7) requires the Court to provide restitution to victims.

**Recommendation:**

**A. Background**

U.S. Minerals operates five plants throughout the United States, which are located in Illinois, Wisconsin, Kansas, Texas, and Louisiana. PSR ¶ 12. U.S. Minerals previously had a plant in Anaconda, Montana, but it ceased operations in June of 2021. PSR ¶¶ 13, 38.

The purpose behind U.S. Minerals is to "offer[ ] a complete range of coal slag and iron silicate media for roofing applications." PSR ¶ 12. The operation in Anaconda specifically manufactured silicate abrasive from a waste copper slag pile, which is within the Anaconda Superfund site. PSR ¶ 13. The processing of the slag is particularly problematic because it generates dust, which releases inorganic arsenic into the air. PSR ¶ 14.

///

///

**B. Lack of Compliance and Care for Workers**

The history of U.S. Minerals demonstrates non-compliance and a lack of regard for worker safety, which necessitated this criminal prosecution.

In July of 2015, the National Institute of Occupational Safety & Health (NIOSH) and the Occupational Safety and Health Administration (OSHA) visited U.S. Minerals in Anaconda to test the levels of arsenic and lead in the air. PSR ¶ 18. While present, NIOSH and OSHA identified 19 serious violations that resulted in fines of $106,800. PSR ¶ 16. Some of the citations included exposing employees to unacceptably high levels of arsenic and lead throughout the Anaconda site. PSR ¶ 19. These high levels of exposure existed despite allegations that U.S. Minerals manipulated the results by "re-run[ing]" already finished product so as not to create as much dust. PSR ¶ 18.

OSHA and NIOSH directed U.S. Minerals to fix the problems, but in 2016, U.S. Minerals claimed their testing results showed lower levels of arsenic that did not warrant any corporate actions. PSR ¶ 25. OSHA inspectors requested those claimed results, but U.S. Minerals failed to provide them. PSR ¶ 25.

The State of Montana (Montana) also learned of health-related issues manifesting in U.S. Minerals employees in 2018, and it began to regulate U.S. Minerals as well. Montana informed U.S. Minerals that its employees were exposed to "apparent inhalation hazards" from dust, and there were no engineering

and administrative controls at the site. PSR ¶ 28. Montana conduced a second site visit four months later, which was November of 2018, and the previous violations by U.S. Minerals remained unresolved. PSR ¶¶ 28, 30. Two months later, in January of 2019, five U.S. Minerals employees tested high for arsenic and a sixth tested high for lead. PSR ¶ 32. A survey of two employees showed they were not informed of their high test results. PSR ¶ 32. One employee stated he was not feeling well and that he had numbness in his feet. PSR ¶ 32. Another stated no hand washing stations were on-site, and a new breakroom did not exist, which left the workers to eat in "poor conditions." PSR ¶ 32. Montana halted all operations of U.S. Minerals at Anaconda. PSR ¶ 33. Montana allowed operations to resume in March of 2019, yet employees of U.S. Minerals continued to test high for arsenic and lead. PSR ¶ 37.

This misconduct, unfortunately, is not exclusive to Montana. U.S. Minerals has been involved in multiple government regulatory contacts throughout the United States, including in Illinois, Texas, Louisiana, Wisconsin, and Minnesota. PSR ¶ 56. Texas even identified U.S. Minerals as a "poor performer." PSR ¶ 56.

### C. The Result

The United States wanted to ensure that U.S. Minerals' criminal activities ended in Montana. Under no circumstances should a company be allowed to face

opposition for criminal activity, close-up shop to avoid further scrutiny, and leave to a different jurisdiction until discovered by authorities there as well.

The Environmental Health and Compliance Plan (Attachment A) ensures that U.S. Minerals' criminal activities end here. The parties have put together a robust schedule and plan to ensure that workers at all U.S. Minerals facilities (even outside Montana) are protected. PSR ¶ 84. Additionally, the Medical Monitoring Program (Attachment B) exists to ensure testing is available, and paid for by U.S. Minerals, for all current and former employees at the Anaconda facility. (Doc. 3-1 at 9.) Injuries due to arsenic exposure are slow-moving, requiring constant monitoring to ensure every health concern is identified and treated.

Let this case serve as a lesson. Montanans are hard workers, and they believe in an honest day's wage. They will not, however, tolerate corporations abusing workers and ignoring safety.

DATED this 1st day of December, 2021.

LEIF JOHNSON
United States Attorney

*<u>/s/ Ryan G. Weldon</u>*
RYAN G. WELDON
Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule, this certifies that the body of the attached memorandum contains 1,305 words, excluding the caption and certificate of compliance.

LEIF JOHNSON
United States Attorney

*/s/ Ryan G. Weldon*
RYAN G. WELDON
Assistant U.S. Attorney